IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JESSE ALVAREZ, R67182, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-1163-SMY |
| | ) | |
| CHRISTOPHER THOMPSON, | ) | |
| JON M. URASKI, | ) | |
| MAJOR CLELAND, | ) | |
| MAJOR LIVELY, | ) | |
| WARDEN LOVE, | ) | |
| CAROL A. MCBRIBE, | ) | |
| MARCUS MYERS SR., | ) | |
| S. MERCIER, | ) | |
| SARA JOHNSON, | ) | |
| ROB JEFFERS, and | ) | |
| JOHN DOE | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jesse Alvarez, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pontiac Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was housed at Pinckneyville Correctional Center ("Pinckneyville"). He alleges retaliation related to his refusal to become an informant, the denial of due process during a resulting disciplinary hearing, unequal treatment, and civil conspiracy. Plaintiff seeks monetary damages and injunctive relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is

1

legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in his Complaint (Doc. 1): In November 2017, Plaintiff was transferred from Menard Correctional Center to Pinckneyville. (*Id.*, p. 11). He is a former member of the Latin Kings street gang (Security Threat Group or "STG" in prison terminology). When Plaintiff was admitted to Pinckneyville, he told Uraski and other prison officials that he had renounced his membership.[1] (*Id.*). Uraski and another Internal Affairs ("IA") officer told him they were aware of his former affiliation and history of filing grievances, and that if he continued to file grievances, they would make his time "miserable." (*Id.*, p. 12). When asked by Uraski and the IA officer if he would work for IA providing information on his former gang, Plaintiff refused. (*Id.*). Uraski and the IA officer began to harass Plaintiff by calling him down to the IA office and having his cell shaken down more often that non-Hispanic inmates. (*Id.*).

On November 12, 2018, Plaintiff was given an investigative disciplinary ticket by Uraski that was signed off on by Cleland and Lively and was taken to segregation. (*Id.*, p. 13). He was then told that Uraski wanted to know if he had reconsidered working for IA or "do you like your new cell?" (*Id.*). Plaintiff again refused.

On November 13, 2018, Plaintiff was issued a full disciplinary ticket by Uraski, again signed off on by Cleland and Lively. (*Id.*). He was not given an opportunity to sign the ticket or request witnesses to be called at the subsequent hearing. (*Id.*). Uraski or another officer stopped

---

[1] Plaintiff uses the anonymous designation "John Doe" to refer to a number of different prison staff and correctional officials with no indication of which individual he is referring to at any given time. As discussed below, this is not adequate pleading. The Court will not use Plaintiff's Doe designation in the factual summary.

by his cell each day to threaten him with segregation until he agreed to work for IA. (*Id.*, p. 14). Plaintiff spoke to Warden Love on November 19, 2018 regarding a missing signature of a hearing investigator and Love said he would have someone come and talk to him about it. (*Id.*, pp. 14-15). No one came before the hearing which took place that day. (*Id.*, p. 15).

The disciplinary hearing was conducted by McBribe and Myers. (*Id.*). Plaintiff presented several factual defenses, including his renunciation of Latin Kings membership. (*Id*). However, the subsequent report only states that he admitted he is a Latin King. (*Id.*). Plaintiff also requested that questions be asked of the confidential informants cited in the disciplinary ticket, but that was refused. (*Id.*, p. 16). When Plaintiff asked how the Adjustment Board could judge the credibility of the confidential informants without independent investigation, McBribe responded "Because Intel said you are guilty." (*Id.*). The Adjustment Board found Plaintiff guilty and recommended sanctions including one year in segregation and transfer to a "Level One" prison. (*Id.*, pp. 16-17). Thompson signed off on the report and punishment.

Plaintiff subsequently filed a grievance over the disciplinary charge and hearing which was reviewed and denied by Mercier, a corrections counselor. (*Id.*, p. 18). Thompson again concurred. (*Id.*). Plaintiff's appeal of the grievance denial was in turn denied in a letter signed by Johnson, although the Administrative Review Board recommended that the punishments be reduced to 6 months of segregation, 6 months of C Grade and 6 months of commissary restriction. (*Id.*, p. 30).

Based on the allegations in the Complaint, the Court finds it convenient to organize the claims in this *pro se* action into the following Counts:

**Count 1:** **First Amendment claim against Uraski for retaliating against Plaintiff for refusing to become an informant.**

**Count 2:** **Fourteenth Amendment equal protection claim against Uraski for increased incidents of summoning him to IA and having his cell shaken down compared to non-Hispanic inmates.**

> **Count 3:** Fourteenth Amendment due process claim against Uraski, Thompson, Cleland, Lively, Love, McBribe, Myers, Mercier and Johnson.
>
> **Count 4:** Civil Conspiracy claim against all Defendants.
>
> **Count 5:** Fourteenth Amendment due process claim regarding the IDOC Disciplinary Policy and Procedure and IDOC Grievance Policy and Procedure.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[2]

## Preliminary Dismissals

Plaintiff names John Doe as a defendant, but merely uses the designation to generically refer to Pinckneyville corrections officers. He specifically refers to Doe as "corrections officers" and states that Doe "may be male or female and may be employed at other correctional centers." (Doc. 1, p. 6). While a plaintiff may use the "John Doe" designation to refer to specific individuals whose names are unknown, a plaintiff will run afoul of the pleading standards *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) by merely asserting that an indefinite number of correctional officers and staff has violated his constitutional rights. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement).

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

4

At this point, there is no way to determine which of an indefinite number of corrections officers is being labelled "John Doe" in a given sentence, or whether it is the same corrections officer previously labelled "John Doe." A plaintiff must make plausible allegations against individuals, describing the "who, what, why, where, and how" that form the basis of the claim against that person. See FED. R. CIV. P. 8(a)(2). Accordingly, "John Doe" and any claims against them are dismissed without prejudice.

## Discussion

### Count 1

To prevail on his First Amendment retaliation claim, Plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted). Plaintiff has adequately stated a claim against Uraski. The question of whether refusing to become an informant for prison officials is "protected activity" under the First Amendment is currently ambiguous in this Circuit. *See Clark v. Reed*, 772 F. App'x 353, 355 (7th Cir. 2019). The Court therefore cannot say that Plaintiff's refusal does not qualify as protected activity. See *Burns v. Martuscello*, 890 F.3d 77, 93 (2d Cir. 2018) (recognizing a "right not to snitch"). The punishments Plaintiff allegedly received for refusing to cooperate were sufficient to deter such activity and Plaintiff allegedly being questioned about whether he was ready to work with IA while in segregation suggest that his refusal was at least a motivating factor. As such, Count 1 will proceed.

## Count 2

In order to state a claim for denial of equal protection under the Fourteenth Amendment, Plaintiff must show he "is a member of a protected class," that he "is otherwise similarly situated to members of the unprotected class," and that he "was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501 (7th Cir. 1993)). Plaintiff alleges that he is Hispanic and that he was treated differently from similarly situated non-Hispanic prisoners with respect to getting called to IA and having his cell searched more often by Uraski. Count 2 will therefore proceed.

## Count 3

Plaintiff has adequately stated a claim for violation of his Fourteenth Amendment due process rights with regard to the disciplinary ticket and hearing, but not against Love, Mercier or Johnson. Standing alone, the receipt of a false disciplinary ticket does not give rise to a due process violation. This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), aff'd, 70 F.3d 117 (7th Cir. 1995) (citations omitted). *See also Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir.1984). Due process safeguards associated with prison disciplinary hearings include: (1) advance written notice of the charges; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence as a defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v.*

*McDonnell*, 418 U.S. 539, 563-69 (1974). Additionally, the decision of the adjustment committee must be supported by "some evidence." *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

Here, Plaintiff has stated a cognizable Fourteenth Amendment due process claim against Uraski, Cleland, Lively and Warden Thompson. He alleges that Uraski, Cleland and Lively submitted a false disciplinary report, and that Myers and McBribe failed to afford the due process safeguards that *Wolff* requires; the alleged statement "because Intel said you are guilty" casts doubt on the unbiased nature of the Adjustment Committee, whether the written statement summarizes the actual reason for the discipline imposed and whether the decision was supported by "some evidence." And, Warden Thompson's review and approval of the finding and recommendation plausibly suggests personal involvement on his part.

However, Plaintiff states no viable claim against Love, Mercier or Johnson. Section 1983 liability requires personal involvement in or personal responsibility for the deprivation of a constitutional right. *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009) (citation omitted). Plaintiff does not allege that Love participated in any aspect of the claimed deprivations. He and Plaintiff allegedly spoke about one technical aspect of the disciplinary ticket shortly before the Adjustment Committee hearing, and Love said he would have someone come speak to Plaintiff about it. That is not personal participation.

As to Mercier and Johnson, "[p]rison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance." *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). Ruling against Plaintiff in an administrative appeal does not amount to approving of or turning a blind eye to constitutional violations that allegedly occurred in the disciplinary hearing. *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an

administrative complaint does not cause or contribute to the violation."). Neither Mercier nor Johnson otherwise caused or contributed to the constitutional deprivation, and therefore cannot be liable. Count 3 will proceed as to Uraski, Thompson, Cleland, Lively, McBribe, and Myers, but will be dismissed without prejudice as to Love, Mercier and Johnson.

## Count 4

Allegations of a conspiracy are held to a higher pleading standard than other allegations. *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). In order to state a civil conspiracy claim, "the plaintiff must [plead facts sufficient to] show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).

Plaintiff has adequately pled a conspiracy by Uraski, Cleland and Lively to submit a bogus disciplinary ticket. However, he does not provide facts sufficient to allege that any of the remaining defendants had agreed to a scheme to deprive him of his constitutional rights, even if that was allegedly the eventual effect of their actions. "An allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence ... they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 556–557 (2007). *See also Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (applying *Twombly* in a civil rights conspiracy claim and affirming dismissal of conspiracy claim resting on conclusory statement that defendants were aiding others in a civil rights violation). The mere fact that Myers and McBribe credited the assertions in the disciplinary ticket, and that Thompson, Mercier and Johnson left the basic findings of the Adjustment

Committee undisturbed does not suggest agreement with the alleged underlying scheme. Similarly, the fact that the Adjustment Committee's report used nearly the same language as the disciplinary ticket (and that Mercier in turn used similar language) is not adequate to suggest preceding agreement on a scheme. Finally, Love's alleged conduct gives no indication of conspiratorial agreement. Therefore, Count 4 will proceed as to Uraski, Cleland and Lively, but will be dismissed without prejudice as to Myers, McBribe, Thompson, Mercier, Johnson and Love.

**Count 5**

Plaintiff asserts in conclusory fashion that the IDOC Disciplinary Policy and Procedure and IDOC Grievance Policy and Procedure are "unconstitutional as applied to him, as well as all similarly situated inmates in IDOC…as applied by Defendants." (Doc. 1, p. 20). A pleading that offers "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quotations omitted).[3] Count 5 will therefore be dismissed without prejudice.

**Preliminary Injunction**

Plaintiff requests a "preliminary and permanent injunction" ordering that "Jeffers"[4] protect him from future retaliation, discrimination and harassment, and implementation of "new policies an procedures for Disciplinary and Grievance process[.]" (Doc. 1, p. 22). To obtain preliminary injunctive relief, Plaintiff must demonstrate that (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm

---

[3] Additionally, any constitutional challenge to the Grievance Policy in particular is doomed, as inmates do not have a constitutional right to an effective grievance procedure. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).
[4] In reality Rob Jeffreys, Acting Director of IDOC.

9

without the relief. *Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) (*citing Woods v. Buss,* 496 F.3d 620, 622 (7th Cir. 2007)).

As to Plaintiff's request for protection, anticipation of reprisal is not sufficient to support injunctive relief. "[A] speculative fear of injury is not a ground for an injunction." *Wright v. Miller*, 561 F. App'x 551, 554 (7th Cir. 2014) (*citing City of Los Angeles v. Lyons*, 461 U.S. 95, 104–05 (1983)). With respect to his request to implement new disciplinary and grievance policies, Plaintiff has not pled any facts that suggest he has no adequate remedy at law or that he will suffer irreparable harm. Additionally, to comply with the Prison Litigation Reform Act, a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Unilaterally overhauling the Illinois prison system's disciplinary and grievance policies is not a narrowly-drawn remedy. Plaintiff's requests for preliminary injunctive relief are **DENIED** without prejudice.

## Motions for Counsel and for Service at Government Expense

In his Motion for Counsel (Doc. 3), Plaintiff indicates that he has sent a number of letters to attorneys seeking representation. However, the Court's authority under 28 U.S.C. § 1915 to request an attorney is limited to indigent parties. 28 U.S.C. § 1915(e)(1). Plaintiff is not proceeding in forma pauperis and has not demonstrated that he otherwise qualifies as indigent.

Even if Plaintiff did qualify as indigent, appointment of counsel would still be denied at this point in the case. Plaintiff appears to have the ability to pursue this action pro se at this time. Plaintiff's pleadings demonstrate an ability to construct coherent sentences and relay information to the Court, and does not cite any significant impairments to his abilities other than limited legal

knowledge.  Therefore, Plaintiff's Motion for Counsel (Doc. 3) is **DENIED** without prejudice. Plaintiff may renew his request for the recruitment of counsel at a later date.

Plaintiff has also filed a Motion for Service at Government Expense under Federal Rule of Civil Procedure 4(c)(3).  (Doc. 4).  The Motion is **GRANTED**, as effecting service privately from prison would likely pose a problem under the 90 day limit imposed by Rule 4(m).

### Disposition

**IT IS ORDERED** that Defendants John Doe, Mercier, Johnson and Love are **DISMISSED** from this action without prejudice.  The Clerk of Court is **DIRECTED** to **TERMINATE** these individuals from the Court's Case Management/Electronic Case Filing ("CM/ECF") system and to correct the case caption to reflect Rob Jeffreys (official capacity only) as a Defendant instead of "Rob Jeffers."

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED without prejudice.** Plaintiff's Motion for Service at Government Expense (Doc. 4) is **GRANTED.**

The Clerk of Court shall prepare for Defendants Uraski, Thompson, Cleland, Lively, McBribe, Myers and Rob Jeffreys (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment as identified by Plaintiff.  If defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).  **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**
**DATED:  March 16, 2020**

/s/ Staci M. Yandle
**STACI M. YANDLE**
**U.S. District Judge**

## Notice

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**