UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSE ALVAREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-cv-01163-GCS |
| | ) |
| DEREK CLELAND, | ) |
| KALE LIVELY, | ) |
| CAROL MCBRIDE, | ) |
| MARCUS MYERS, | ) |
| ROB JEFFREYS, in his official capacity | ) |
| only, | ) |
| SCOTT THOMPSON, | ) |
| and | ) |
| JON URASKI, | ) |
| | ) |
| Defendants.[1] | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

## I. INTRODUCTION

Pending before the Court is Defendants' motion for summary judgment (Doc. 84, 85).[2] Specifically, Defendants argue that Defendants Cleland, Lively, Uraski, and Thompson lack sufficient personal involvement to be held liable under Section 1983 for

---

[1] Rob Jeffreys is named in his official capacity only as the Director of the Illinois Department of Corrections for the purpose of implementing any Court ordered injunctive relief. (Doc. 15).

[2] Along with the motion for summary judgment, Defendants filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the consequences of failing to respond to the motion for summary judgment and what is required in responding to the motion. (Doc. 86).

violations of Plaintiff Jesse Alvarez's due process rights under the Fourteenth Amendment. They further argue that Plaintiff received all the due process protections required during the prison disciplinary hearing. Alternatively, Defendants argue they are entitled to qualified immunity. Plaintiff opposes the motion arguing that Defendants violated his due process rights in that they did not allow him to submit a written statement and to call witnesses. (Doc. 87). They also failed to follow the guidelines of DR 504 Administration of Discipline. *Id.* As the motion for summary judgment is fully briefed, the Court turns to address the merits of the motion.

Plaintiff is an inmate in the Illinois Department of Corrections ("IDOC") currently incarcerated at Lawrence Correctional Center. He brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was housed at Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff alleges retaliation related to his refusal to become an informant, the denial of his due process rights during a resulting disciplinary hearing, unequal treatment, and civil conspiracy. Plaintiff seeks monetary damages and injunctive relief.

Plaintiff alleges in his Complaint that in November 2017, he was transferred from Menard Correctional Center to Pinckneyville. (Doc. 1, p. 11). He was a former member of the Latin Kings street gang (Security Threat Group or "STG" in prison terminology). After Plaintiff was transferred to Pinckneyville, he told Defendant Uraski and other prison officials that he had renounced his membership in the Latin Kings. *Id*. Uraski and another Internal Affairs ("IA") officer told him they were aware of his former affiliation and

history of filing grievances and that if he continued to file grievances, they would make his time "miserable." *Id*. at p. 12. When asked by Uraski and the IA officer if he would work for IA providing information on his former gang, Plaintiff refused. *Id*. Uraski and the IA officer then began to harass Plaintiff by summoning him to the IA office and having his cell shaken down more often that non-Hispanic inmates. *Id*.

On November 12, 2018, Plaintiff was given an investigative disciplinary ticket by Uraski that was signed off on by Defendants Cleland and Lively; as a result, Plaintiff was taken to segregation. (Doc. 1, p. 13). Plaintiff was then asked by Uraski whether he had reconsidered working for IA or "do you like your new cell?" *Id*. Plaintiff again refused.

On November 13, 2018, Plaintiff was issued a full disciplinary ticket by Uraski, which was again signed off on by Cleland and Lively. (Doc. 1, p. 13.). Plaintiff was not given an opportunity to sign the ticket or request witnesses at the subsequent hearing. *Id*. Uraski or another officer stopped by his cell each day to threaten him with segregation until he agreed to work for IA. *Id.* at p. 14. Plaintiff spoke to Warden Love on November 19, 2018, regarding a missing signature of a hearing investigator, and Love said he would have someone come and talk to him about it. *Id.* at p. 14, 15. However, no one came to talk to Plaintiff before the hearing which took place that same day. *Id.* at p. 15.

The disciplinary hearing was conducted by Defendants McBride and Myers. (Doc. 1, p. 15). Plaintiff presented several factual defenses, including his renunciation of his Latin Kings membership. *Id*. However, the subsequent report only states that he admitted he was a Latin King member. *Id.* Plaintiff also requested that questions be asked of the

confidential informants cited in the disciplinary ticket, but that was refused. *Id.* at p. 16. When Plaintiff asked how the Adjustment Board could judge the credibility of the confidential informants without independent investigation, McBride responded "[b]ecause Intel said you are guilty." *Id.* The Adjustment Board found Plaintiff guilty and recommended sanctions including one year in segregation and transfer to a "Level One" prison. *Id.* at p. 16-17. Defendant Thompson signed off on the report and punishment.

Plaintiff subsequently filed a grievance over the disciplinary charge and hearing which was reviewed and denied by Mercier, a corrections counselor. (Doc. 1, p. 18). Thompson again concurred. *Id.* Plaintiff's appeal of the grievance denial was in turn denied in a letter signed by Sarah Johnson from the Administrative Review Board ("ARB"). *Id.* at p. 30. The ARB, however, recommended that Plaintiff's punishment be reduced to 6 months of segregation, 6 months of C Grade, and 6 months of commissary restriction. *Id.*

After conducting a preliminary review pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff to proceed with the following claims:

> **Count 1**: First Amendment claim against Uraski for retaliating against Plaintiff for refusing to become an informant.
>
> **Count 2**: Fourteenth Amendment equal protection claim against Uraski for increased incidents of summoning him to IA and having his cell shaken down compared to non-Hispanic inmates.
>
> **Count 3**: Fourteenth Amendment due process claim against Uraski, Thompson, Cleland, Lively, McBride, and Myers.
>
> **Count 4**: Civil conspiracy claim against Uraski, Cleland, and Lively.

(Doc. 15).

On June 8, 2021, the Court held an evidentiary hearing regarding exhaustion of administrative remedies as to Plaintiff's claims. (Doc. 53). Two days, later the Court rendered a decision granting Defendants' partial motion for summary judgment and dismissing without prejudice Plaintiff's claims in Counts 1, 2, and 4 for failure to exhaust administrative remedies. (Doc. 54). Remaining at this stage of the litigation is Plaintiff's Fourteenth Amendment due process claim against the Defendants in Count 3.

## II.     FACTS

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

At all relevant times, Plaintiff was an inmate incarcerated within the IDOC and housed at Pinckneyville. Defendant Uraski was employed as a correctional officer in the INTEL division at Pinckneyville. Defendants Cleland and Lively were employed as Majors at Pinckneyville. Defendant Thompson was the Warden of Pinckneyville. Defendants Myers and McBride were members of the Adjustment Committee.

On November 12, 2018, Defendant Uraski issued an investigative ticket with respect to Plaintiff, which placed him on investigative status for the safety and security of the institution. (Doc. 85-2, p. 1). That same day, Defendants Cleland and Lively signed off on the ticket. *Id*.

The next day, Defendant Uraski issued a disciplinary ticket to Plaintiff for

Unauthorized Organization Leadership Activity – 111 STG leadership. Again, Defendants Cleland and Lively signed off on the ticket. Specifically, the ticket stated the following:

> On 11/13/2018 the Investigation Unit completed an inquiry which revealed inmate ALVAREZ, JESSE R67182 currently holds the rank of INCA for the LATIN KINGS at Pinckneyville C.C. The Investigations Unit interviewed multiple confidential informants who shall remain nameless for the safety and security of the institution and found to be reliable due to the consistency of the statements provided; stated ALVAREZ has been actively recruiting LATIN KINGS in an attempt to organize the LATIN KING NATION at Pinckneyville C.C. C/I's stated ALVAREZ has already helped organize two housing units at Pinckneyville C.C. The two housing units are currently abiding by the bi laws of the LATIN KINGS Security Threat Group. Such Laws as LATIN KINGS are to travel together and aid and assist of a fellow LATIN KINGS in an altercation. ALVAREZ is a self-admitted member of the LATIN KINGS Security Threat Group and self-admitted leader for the LATIN KINGS. The LATIN KINGS Security Threat Group belongs to the LATIN KING NATION. Due to the information provided by the C/I's the Investigations Unit has issued ALVAREZ, JESSE R67182 for 111 – Security Threat Group or Unauthorized Organizational Leadership Activity. Inmate Alvarez was identified by Institutional Graphics and State ID.

(Doc. 85-2, p. 2, 3).

Additionally, the ticket informed Plaintiff of the procedures for the Adjustment Committee Hearing:

> You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.
>
> You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance

> if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

*Id.* at p. 2. The ticket shows that Plaintiff refused to sign the ticket on November 14, 2018. *Id.*

On November 19, 2018, the Adjustment Committee at Pinckneyville held a hearing on Plaintiff's November 13, 2018 disciplinary ticket. Defendants Myers and McBride were the members of the Adjustment Committee that heard the disciplinary ticket. (Doc. 85-3). They found Plaintiff guilty of STG or Unauthorized Organization. *Id.* at p. 1. The record of the proceedings state that Plaintiff did not request witnesses. *Id.* It further indicated that the "DR [was] read to inmate. Inmate pled not guilty. Stating, 'Intel said I hold rank of INCA: I do not have anything to do with people being together. I am Latin King. To become INCA they have to be voted in with an election. There was no election. Inca holds the #1 rank, Conseca holds the #2 rank and the Enforcer holds #3 rank and all have to be voted in.'" *Id.*

> The basis for the Adjustment Committee was the following:
>
> On 11/13/18, Intel officer Uraski completed an inquiry which revealed inmate Alvarez, Jesse #R67182 currently holds the position as INCA for the Latin Kings at Pinckneyville Correctional Center. The Intel Unit interviewed multiple confidential informants who shall remain nameless for the safety and security of the institution and deemed reliable due to the consistency of their statements. Sources stated Alvarez has been actively recruiting Latin Kings in an attempt to organize Latin Kings Nation at Pinckneyville. The two housing units are currently abiding by the "bi laws" of the Latin King Security Threat Group. Such laws are Latin Kings are to travel together and aid and assist of a fellow Latin King in an altercation. Alvarez is a self-admitted member of the Latin Kings Security Threat Group. Inmates admission that he does know about the Latin King elections that have to be held for rank. Confidential

source statements. Inmate identified by ID card and Institutional Graphics.

Intel contacted and verified statements of confidential sources are true and accurate.

Note: INMATE ALVAREZ #R67182 HAS PRIOR 205 STG ACTIVITY ON 03/24/15 AND 06/18/16.

(Doc. 85-3, p. 1). The Adjustment Committee recommended that Plaintiff be disciplined with one year of C Grade; one year of segregation; one year of commissary restriction; six months of contact visits restriction; and a Level-1 transfer. *Id.* Defendant Thompson, via signatory, signed off on the recommendation on November 26, 2018. *Id.* at p. 2.

Eventually, Plaintiff's sentence was adjusted to C grade/level reduction reduced to six months, segregation reduced to six months; and commissary reduced to six months. (Doc. 85-5, p. 2).

Defendants Uraski, Cleland, Lively, and Thompson did not attend the Adjustment Committee Hearing.

### III.   LEGAL STANDARDS

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. PROC. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any doubt as to the existence of a genuine issue of fact must be resolved against the moving

party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of h[is] case with respect to which []he has the burden of proof." *Celotex*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support that assertion by citing to materials in the record or by showing that the materials in the record do not establish the absence of a genuine dispute. *See* FED. R. CIV. PROC. 56. If the non-moving party does not show evidence exists that would reasonably allow a factfinder to decide in its favor on a material issue, the court must enter summary judgment against the non-moving party. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The Court's role at summary judgment is not to evaluate the weight of evidence, to judge witness credibility, or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

To establish a Fourteenth Amendment procedural due process claim, Plaintiff must demonstrate that the state deprived him of a constitutionally protected interest in "'life, liberty, or property' . . . without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A disciplinary ticket, even if falsely issued, does not violate the Fourteenth Amendment if the inmate receives procedural due process in the disposition of the ticket. *See Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984). Therefore, to

determine whether a procedural due process violation has occurred, the Court must inquire into "what process the State provided, and whether it was constitutionally adequate." *Zinermon*, 494 U.S. at 125.

Here, Plaintiff initially was sentenced to one year in disciplinary segregation, which is sufficient to indicate a protectable liberty interest that triggers procedural due process safeguards.[3] *See Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009). Those safeguards include: (1) advanced written notice of the charge against him; (2) the right to appear before an impartial hearing panel; (3) the right to call witnesses and present documentary evidence if prison safety allows; and (4) a written statement of the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-569 (1974). In addition, the disciplinary decision must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). That being said, "[e]ven if the procedures [] are legitimate, it is impermissible to employ those procedures vindictively or maliciously so as to deny a particular individual due process." *Ciechon v. City of Chicago*, 686 F.2d 511, 517 (7th Cir. 1982). A plaintiff may proceed with a procedural due process claim if he or she can show "that the decision has already been made and any hearing would be a sham . . . ." *Ryan v. Illinois Dept. of Children & Family Servs.*, 185 F.3d 751, 762 (7th Cir. 1999).

---

[3] As stated previously, Alvarez's sentence was reduced to six months segregation. (Doc. 85-5, p. 2).

"In order to guarantee the inmate's right to a fair hearing, . . . a prison disciplinary board must accompany the use of a confidential informant's testimony with an indication that the informant is reliable." *Whitford v. Boglino*, 63 F.3d 527, 535 (7th Cir. 1995). "Reliability can be established based on (1) the oath of the investigating officer as to the truth of his report, (2) corroborating testimony, (3) a statement on the record that the chairman of the [Adjustment Committee] had firsthand knowledge of the sources and considered them reliable based on a past record of reliability, or (4) an *in camera* review of material documenting the investigator's assessment of the credibility." *Ashby v. Davis*, No. 02-3007, 82 Fed. Appx. 467, 471 (7th Cir. Oct. 21, 2003)(citing *Whitford*, 63 F.3d at 535-536). The findings of the prison disciplinary board must be supported "by some evidence in the record." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985). Judicial review determines "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-456.

## IV. DISCUSSION

Defendants argue that Plaintiff received the required safeguards under *Wolff* for the disciplinary hearing. Despite Plaintiff's assertion of innocence throughout the proceedings, the Court agrees with Defendants. Based on the record, the Court finds, after taking the evidence in the light most favorable to Plaintiff, that Plaintiff received all necessary due process safeguards with respect to the Adjustment Committee hearing.

There is also evidence that could support the conclusion reached by the disciplinary board.[4] Thus, Defendants are entitled to summary judgment.

Here, Plaintiff received more than 24 hours advance written notice of the charges against him, as he was served with a copy of the disciplinary report on November 14, 2018. (Doc. 85-2). During the hearing, Plaintiff provided an oral statement on his own behalf in defense of the charge. (Doc. 85-3). As to not being able to call witnesses at the hearing, Plaintiff admitted in his deposition that he did not follow the proper procedures contained on the disciplinary ticket to request witnesses. (Doc. 85-1, p. 42).[5] The

---

[4] As the Court finds that Plaintiff was provided due process during his disciplinary hearing, the Court need not address Defendants arguments regarding personal involvement as to Defendants Uraski, Cleland, Lively, and Thompson, as well as the qualified immunity argument.

[5] Plaintiff testified as to the following:

> Question: Okay. So you said that you -- how did you notify the adjustment committee that you wanted those 6 witnesses called?
> Answer: I wrote it on a piece of paper.
> Question: Okay.
> Answer: And I mailed it to them.
> Question: Like a plain sheet of paper?
> Answer: Yeah, a plain sheet of paper, sent it out when they pick up mail.
> Question: Okay. Did -- so you didn't tear off the bottom of that ticket and write it on there --
> Answer: No.
> Question: --you wrote it on a different paper?
> Answer: No.
> Question: Okay. Did you name the five-day officers that you wanted them to call?
> Answer: Yeah, I put the five-day officers on there. I can't tell you their names anymore, it's been so long. But, yeah, it was -- because one of them was trying to get me a porter job to work as a janitor in a cell house.
> …
> Question: Okay. Did you -- and -- and tell me how you submitted that to them.
> Answer: I just wrote on a blank piece of paper and I addressed it to the adjustment committee and I stuck 17 it in the door so at nighttime when they collect the mail, I guess they forward it to the adjustment committee. Like that's the procedure, I guess. You know, like the mail room or whoever separates the mail sends it to where it needs to be sent.

(Doc. 85-1, p. 42, 43).

disciplinary ticket report informs Plaintiff of the following procedures: "[y]ou must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee." (Doc. 85-2, p. 2). Likewise, the investigative report states: "[d]etach and Return to the Adjustment Committee or Program Unit Prior to the Hearing." *Id.* at p. 1. Plaintiff, however, did not follow this procedure. Rather, he apparently submitted it to the Adjustment Committee on a separate piece of paper. The record further contains no evidence that this separate piece of paper was ever received by the Adjustment Committee.

Although Plaintiff asserted his innocence throughout the proceedings, the Court, finds that the Adjustment Committee did have evidence before it to support its finding of guilt and that the Adjustment Committee provided an adequate statement for its findings. The evidence stemmed from an investigation of the Latin Kings STG leadership by the Pinckneyville CC Intelligence Unit. This evidence consisted of statements from multiple confidential informants (at least four), whose names were withheld due to the safety and security concerns of the institution. (Doc. 85-4). It also included consistent/corroborating statements amongst the multiple confidential informants about Plaintiff being the "INCA" for the Lakin Kings, Plaintiff putting Pinckneyville on count, and Plaintiff having already organized two houses, R3 and R4. *Id.* The record further notes that the Adjustment Committee contacted Intel, who in turn verified the statements of the confidential sources as true and accurate. (Doc. 85-3, p. 1). The consistent and

corroborative statements amongst the confidential sources and the verification of such statements are sufficient to satisfy the reliability requirements set forth in *Whitford*. Plaintiff was furthermore identified pursuant to Institutional Graphics and State ID. *Id*. This evidence is sufficient to support the finding that Plaintiff engaged in unauthorized gang activity. Although this evidence was contested, it was nevertheless more than sufficient to impose disciplinary sanctions on Plaintiff. Further, the Adjustment Committee in its final summary report set forth in detail the basis for its decision. (Doc. 85-3).

Additionally, the Court rejects Plaintiff's argument that Uraski's reports containing the statements from the confidential informants are false. Plaintiff bases this on the fact that he filed a Freedom of Information Act ("FOIA") request seeking "incident reports" for the dates of November 12, 2018, and November 13, 2018, and was told that "IDOC does not maintain or possess incident reports concerning you for the requested dates." (Doc. 87, p. 5). The fact that the FOIA officer did not find the confidential informants' reports taken/written by Uraski does not make them false. First, these types of reports are not "incident reports;" rather, they are investigative interviews of confidential informants taken during a prison disciplinary investigation. Here, Plaintiff specifically asked for incident reports. Furthermore, the statements of confidential informants are generally not produced through a FOIA request. They are also not generally produced so as to maintain the safety and security of the prison setting. The dates on these confidential informant's statements coincide with the dates of the

disciplinary investigation, the disciplinary ticket, and the Adjustment Committee's hearing regarding Plaintiff, and thus, they all lend credence to their veracity. Further, the record reveals that Plaintiff was given redacted copies of these reports during this litigation.

Lastly, the Court rejects Plaintiff's argument that the Defendants violated due process by not following DR 504. A violation of an Administrative Code or Rule does not amount to a constitutional violation. *See*, *e.g.*, *White v. Henman*, 977 F.2d 292, 295 (7th Cir. 1992)(noting that the violation of an administrative rule is not the same as a violation of the Constitution). Moreover, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state statutes, administrative regulations, or prison rules. *See* S*cott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). *See also Sobitan v. Glud*, 589 F.3d 379, 389 (7th Cir. 2009)(stating that "[b]y definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right.").

## V. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment (Doc. 84). The Court **FINDS** in favor of Defendants Derek Cleland, Kale Lively, Carol McBride, Marcus Myers, Christopher (Scott) Thompson, Jon Uraski and Rob Jeffreys, in his official capacity only, and against Plaintiff Jesse Alvarez. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and to close the case.

IT IS SO ORDERED.

DATED: March 1, 2023.

Digitally signed by Judge Sison
Date: 2023.03.01 13:08:44 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**